Parker, C. J.
The circumstances of the plaintiff’s claim arc so favorable in an equitable point of view, and the grounds of defence, as they appear in the report of the trial, so rigid and illiberal, that, if regret was to be indulged in the performance of duty, we should certainly feel no small portion of it on the present occasion. We have indeed looked diligently for principles and authorities, upon which the plaintiff’s case might be sustained, but without success. There being no express promise, the question is, whether the facts proved raise an implied promise against the defendant.
The defendant’s son had fallen into distress in a foreign country, to which he had fled to avoid the consequences of a crime committed in his native country. He was a minor and without property. The plaintiff, knowing his father to be a reputable merchant, paid his board, and supplied him with such things as were necessary for his condition, relying upon the honor and gratitude of the father to reimburse him. The liability of the father must depend altogether upon the principles of law, which govern the relation of parent and child. The father is obliged to support his children, while they remain part of his family. • * Perhaps if he fail to fur- [ * 31 ] *26 nish them with clothing and food necessary to the support of life, any one who furnishes such necessaries may maintain an action against the father, upon the presumption of an assent on his part. Perhaps, also, if he cruelly and causelessly turn them out of doors, they would carry with them a credit on the father for the means of support; although it may be questioned whether, in such a case, the support of such children should not be provided for pursuant to the statute, requiring the kindred of poor persons within certain degrees to support them (7). But upon these points, the case before us does not require an opinion.
However this may be, we think it clear that, when a child leaves his parent’s house voluntarily, for the purpose of seeking his fortune in the world, or to avoid the discipline and restraint so necessary for the due regulation of families, he carries with him no credit; and the parent is under no obligation to pay for his support.
The case is still stronger against such a claim, when the child, having arrived at years of discretion, but not of manhood, shall have violated the laws and become a fugitive from justice. For necessaries a minor under such circumstances, in countries where the common law prevails, and probably in all civilized countries, is personally liable; and when his personal liability begins, it should seem that the liability of his parents would cease. An infant, when at home under the care of his father, and supported by him, is not liable even for necessaries. If he were, the father would be deprived of the right of exercising his discretion, as to the manner and degree of his support (8). It would seem a just inference from the principles of the decision referred to, that, when the authority of the parent is abjured, without any necessity occasioned by the parent, all obligation to provide for him has ceased, and that those who choose to supply him, do it at the peril of the child’s ability, or the parent’s willingness to indemnify them..
[ * 32 ] * There are undoubtedly some cases, in which the application of this doctrine may appear, harsh ; but an attention to the consequences of a different doctrine will be a sufficient vindication of the principle. Could a refractory or vicious son leave his father’s house, without being exposed to want, carrying with him a credit on his father wherever he might wander, the motive for submitting to authority might be materially impaired, and a great diminution of parental influence might ensue. One of the greatest restraints upon the bad passions and vicious propensities would i.e removed, if young persons should feel that they could flee their parents’ presence, without suffering in any of the essentials of life.
The law, therefore, has wisely left individual cases of generous *27 interference, to depend upon the honor of those connected with the object of it, rather than place in the hands of thoughtless or ill-disposed youth their parent’s purse, to supply their wants with, whenever they should incline to deny his authority, and withdraw themselves from his government.
In the argument for the plaintiff, we see many reasons to regret that he has been obliged to resort to a suit for money, which he had a right to expect would have been returned to him, with gratitude for his well-intended advances. But the law cannot be bent to his case; and we are persuaded, that public policy, and a due regard to parental authority, will sufficiently justify the law (9).

New trial granted.

Note. After the foregoing decision was pronounced, it was understood that the defendant satisfied the plaintiff^ demand; and that he had resisted payment only to have the principle, which he considered an important one, judicially settled.

 Stat. 1793, c. 59, § 3.

 2 W. Black. Rep. 1325

 [By the common, law, parents are bound to maintain their children during minority 1 Blake. Comm. 447. —Waltham vs. Sparkes, Ld. Ray. 41. —Reeves Dom. Rel. 282.—And by the statute of 43 Elizabeth, Ch. 2, the parents, it" of sufficient ability, are bound to maintain their children at any age, if such children be poor and impotent. Ld. Ray. 699. —Roach vs. Garoon, 1 Ves. 160. —The obligation of parents to maintain their children is imposed by the law of nature. Puff. Book 4, Ch. 11.—The same obligation is recognized by the civil law. Dig. Lib. 25, Tit. 3. —5 Voct. Lib. 25, Tit. 3. —By the Scotch law, a child is entitled to maintenance in his father’s house (1 Ersk. 6, § 56), or elsewhere if his father’s conduct endanger his safety, or if the father choose to give him separate maintenance. The amount above bare subsistence is at the father’s discretion. The mere name of a profession is not enough to satisfy the obligation ; but an occupation in the lower ranks of life is sufficient. The obligation is not limited to any age, but ceases with forisfamiliation, unless the child shall fall into indigence and want. Bell. 445. —Moule vs. Maule, l Wils, & Shaw, 266. —Woolley vs. Maidment, 6 Dow. 259. —2 Darling Prac. 461—484.—By the French code, “ Les époux contractent ensemble par le fait seul du manage l’obligation de nourrir, entretenir et ¿lever leurs enfans.’’ Cod. Civ. Lib. 1. Tit. 5. Ch. 5. Art. 203. “ Le pere ne doit pas des alimens ¡1 son fils hors de- la maison paternelle; 11 ne lui en doit pas du tout, si ce fils a appris un ¿tat dans l’exercice duquel 11 pent trouver sa subsistance. Lorsque des enfans en état de gagner leur vie quittent le domicile paternel centre la volonté du pére, celui-ci n’est pas tenu de leur fournir des alimens encore qu’ils offrent de justifier ne l’avoir quitt¿ que par suite de mauvais traitemens. L’obligation de fournir des alimens a fils cesse lorsqu’il est au pouvoir de celui-ci de s’en procurer par son travail et son in dustrie, on lorsque celui-ci a des revenus assez considerable pour suffire h son exist ence.” Code Civil, annotée par Sirey. Art. 203. n. 10.11.15.16. By the act of 1793, c. 59, § 3-, parents, if they be of sufficient ability, are liable to support their poor chil dren according to their ability.—Ed.]