## DAVID DODGE *versus* AMOS ADAMS.

In order that a moral obligation may constitute a valid consideration for an express promise, there must have been some preëxisting legal consideration.

Where the defendant's minor children were taken from his house without his consent and without any neglect on his part to provide for them, and were boarded by his wife's father during the pendency of a libel filed by her for a divorce, and the defendant, after the board had been furnished, promised to pay therefor, it was *held*, that the promise was not binding for want of a sufficient consideration

ASSUMPSIT for boarding the defendant's two minor children during the pendency of a libel for divorce *a mensâ et thoro*, filed against the defendant by his wife. Trial before *Putnam* J.

The plaintiff, who was the father of the defendant's wife, produced one Proctor as a witness, who testified that he was present with the defendant and his wife, and the defendant said that his children were snatched from him ; that he thought he was not obliged to pay any thing, but that he would pay something reasonable for their board with their grandfather ; that he would pay 75 cents per week, which was the amount it would have cost him to have boarded them at his own home. Mrs. Adams then desired the witness to tell her father what the defendant had said, " so that he might rely on having something " ; and the witness accordingly did tell the plaintiff what the defendant had said.

It was the desire of the defendant to get his wife and children home, and his wife did not consent to go home with her children, until after this conversation ; but the defendant's promise or declaration was not made upon condition.

The libel was afterwards dismissed, and the defendant and his wife agreed to settle their disputes, after the above conversation, and on the same day that it took place ; and she and her children did return to their home.

The plaintiff here rested his case, and no evidence was put in by the defendant.

The defendant contended that there was no undertaking or promise made to the plaintiff, and if there were, that there was no consideration for it, or that the consideration was past. He said his wife and children went away from his house without his

consent and without any fault on his part ; and that it was for the plaintiff to prove, if he could, that the defendant was in fault and had not made a suitable provision for his wife and children at home.

A verdict was returned for the plaintiff, subject to the opinion of the whole Court.

*Oct.* 18*th.*    *Buttrick,* for the defendant, cited *Comstock* v. *Smith,* 7 Johns. R. 87 ; Yelv. (Metcalf's ed.) 41, note 1 ; *Mills* v. *Wyman,* 3 Pick. 207, [see 2d ed. 211, note ;] *Angel* v. *M'Lellan,* 16 Mass. R. 28 ; *Loomis* v. *Newhall,* 15 Pick. 159 ; *Frear* v. *Hardenbergh,* 5 Johns. R. 272.

*A. W. Austin,* for the plaintiff, cited *Andover &c. Turnpike Corp.* v. *Gould,* 6 Mass. R. 40 ; *Salem* v. *Andover,* 3 Mass. R. 438 ; *Maxim* v. *Morse,* 8 Mass. R. 127 ; *Train* v. *Gold,* 5 Pick. 380

*Oct.* 21*st.*    DEWEY J. delivered the judgment of the Court. The plaintiff relies upon an express promise by the defendant to pay for boarding his minor children. This promise was made after all the expenditures for which compensation is now demanded had been incurred, and the defendant says that it was *nudum pactum ;* that no damage having been sustained by the plaintiff and no benefit having accrued to the defendant in consequence of the promise, it is a promise without any consideration and of no validity.

To this the plaintiff replies, that the defendant was under a moral obligation to support his minor children, and that this moral obligation was a sufficient consideration for an express promise.

If the term *moral obligation* be used in its more extended sense, as embracing the whole circle of moral duties, and more especially if it include those imperfect obligations which the divine law enjoins, but which human laws do not reach, the plaintiff might well say that the defendant was under a moral obligation to contribute, within the extent of his means, at all times for the necessities of his children and even beyond the limits of their minority. But is this that kind of moral obligation which constitutes a legal foundation for an express promise ? To constitute a moral obligation the consideration for an express promise which may be enforced in a court of law,

there must have been some preëxisting legal obligation. This legal obligation may have ceased to have force by reason of some statute bar, as in the case of the statute of limitations, but there having been once a legal obligation, the moral obligation is sufficient to revive the liability by means of a new promise.

This subject was much considered by this Court in the case of *Mills* v. *Wyman*, 3 Pick. 207. That was a case where an adult son of the defendant, being in distress and in need of relief at a distance from home, was supplied by the plaintiff, and the plaintiff gave notice of the same to the father, who thereupon promised in writing to pay the expenses thus incurred. The plaintiff claimed to recover, on the ground that a moral obligation was a sufficient consideration for an express promise ; but the Court, after full consideration of the question and the authorities bearing on it, held the consideration insufficient and the promise not binding in law.

The principles of that case clearly establish the position, that the mere relationship between the defendant and his children did not *per se* furnish evidence of that degree of moral obligation sufficient to maintain an action on the express promise. The legal principles of that case, have been fully sanctioned in the case of *Cook* v. *Bradley*, 7 Connect. R. 57. Does the fact, that in the case now under consideration, the children were minors, necessarily change the nature of the consideration ? Is there a legal obligation on the father to pay the expenses of supporting his minor children in all places and under all circumstances, or is it an obligation somewhat limited in its character ? The general obligation of furnishing reasonable and adequate support for his children during the period of their infancy, is clearly by law devolved on the parent ; but he has the right of providing for them under his own roof and in such a way as he may find most convenient and least burdensome to himself. It is well settled, that if a child voluntarily leaves his father's house and without any sufficient occasion therefor, the father is not bound to provide for him elsewhere. In the language of the case of *Angel* v. *M'Lellan*, 16 Mass. R. 28, whenever the authority of the parent shall be abjured without any necessity occasioned by the parent, all obligation to provide

for the child has ceased.   It would be no less true, that where
the child was induced by another person to leave the family of
the father without any necessity for so doing, the person thus
influencing him to leave, would, in case he should furnish sup-
plies, have no cause of action against the father.   It is also
very clear, that the liability of the parent for support furnished
his children, does not always arise when his children have been
provided for by others, although in so doing they have actually
benefited the parent.

It becomes necessary therefore, in each case, to ascertain
under what circumstances the supplies were furnished, before
we can decide whether there was a sufficient consideration to
create a liability on the part of the parent to pay for them.
Upon looking into the report of facts in the present case, it is
apparent that the plaintiff relies solely upon the ground that
these supplies were furnished by him for the children of the
defendant, and that the defendant subsequently promised to pay
what the same were reasonably worth.   The plaintiff does not
show that any necessity existed for his interference, any want of
full and adequate provision for the children at the house of their
father, or any facts tending to prove that it was necessary to
maintain them elsewhere.   So far as it appears in the case,
they left without the consent of the father, and without any
fault on his part.   There is an entire absence of all those cir-
cumstances that would create such an obligation as would fur-
nish a legal consideration for an express promise.   The proof
of such facts must come from the plaintiff.   The burden is on
him to show that there existed a necessity for furnishing these
supplies, and that this necessity was occasioned by the defendant.
The plaintiff having failed to do so, has furnished no sufficient
evidence to maintain his action.   The promise of the defend-
ant was merely gratuitous and cannot be enforced in a court of
law.

*The verdict is set aside, and the plaintiff is to become
nonsuit.*