ELIZABETH A. TRAINER *vs.* GEORGE F. TRUMBULL.

Suffolk.    Jan. 18. — May 7, 1886.    DEVENS & GARDNER, JJ., absent.

A person who takes from an almshouse a minor, whose father is an inmate of a soldiers' home, and whose mother has been committed to a reformatory institution, who has a guardian, and who will inherit property upon the death of his father, may maintain an action against the minor, after his father's death, for necessaries furnished to him upon the credit of his expectations of property.

CONTRACT upon an account annexed, for "board, washing, doctor's bills, medicine, care, books," etc., from November 14, 1877, to November 1, 1883, $1301.57, with a credit of $219.34, received from E. S. Cutter at various times, and applied towards the charges for the years 1877 and 1878, leaving a balance due of $1082.23. Writ dated December 10, 1883. Trial in the Superior Court, without a jury, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The defendant is a minor, who was born in January, 1868, and was the only child of George Bryant Trumbull, who, on November 1, 1883, died at the Soldiers' Home, in Togus, Maine, where he had resided from 1876, and previously. The defendant's mother, who was the wife of said George Bryant Trumbull, was, on October 25, 1875, committed to the house of industry on Deer Island, Boston, and the defendant was, on the same day, sent to the almshouse on Deer Island, as a pauper, and there remained until he was removed to the Marcella Street Home for Paupers and Neglected Boys and Girls, in April, 1877. On November 17, 1877, the plaintiff removed the defendant from the Marcella Street Home to her home, he being then a pauper, and in a diseased and sickly condition, and there kept him to the time of bringing this action; and, during all this period, maintained him, providing him with food, clothing, lodging, medical attendance and nursing when sick, and the means of education, at a cost to the plaintiff — in addition to the reasonable value of her services in making such provision, which the judge ruled was in law a provision for necessaries to the defendant — not less than the sum stated in the account annexed to the declaration.

George Bryant Trumbull was the nephew and adopted son of Susan Bryant, of Boston, who died prior to March, 1848, leaving a will, which contained the following provisions:

" Fifth. After first paying said three dollars per week to my said mother, I give, devise, and bequeath to my dearly beloved and adopted son, George Bryant Trumbull, a minor child of my said sister, Catherine Trumbull, and her husband, the said James Trumbull, the use and income of all the residue of my estate, real and personal, of which I may die seised and possessed, for and during the term of his minority; and, after the decease of my said mother, my will is, that my executor shall collect and apply the whole of the income and profits of all my estate, real and personal, then existing, and that he shall apply and appropriate the whole or so much of said income as he may deem fit and useful, to the support and education of my said adopted son, until he arrives at the age of twenty-one years, if he shall so long survive.

" Sixth. I give, devise, and bequeath to my said adopted son, the said George Bryant Trumbull, all the rest and residue of my estate, real and personal and mixed, of which I may die seised or possessed, or in which I may have any right, and wheresoever found, to have and to hold to him for life, and to his lawful issue forever, if he shall die leaving any such issue; but in case he shall decease without leaving such issue, then I give, devise, and bequeath all the said rest and residue of my said estate, real, personal, and mixed, to Harriet Trumbull, Julia Trumbull, and Catherine Trumbull, children of James and Catherine Trumbull, before named, to be equally divided between them, share and share alike, and to their heirs and assigns forever."

George Bryant Trumbull, in 1867, made a lease to one Cutter, for the term of fifty years, of the estate devised to him by the will of Susan Bryant, reserving to himself a rental of $50 per year for the first five years, and $300 per year for the remainder of the term. During the period of the defendant's residence with the plaintiff, George Bryant Trumbull had no property or means available for the maintenance of the defendant, except as aforesaid, until in July, 1883, when he received arrears of a pension from the United States, amounting to the sum of $1100,

and an allowance, subsequently, of $8 per month. All the sums of money received by the plaintiff, and credited in the account annexed to the declaration, were received from said Cutter, lessee of the estate devised to George Bryant Trumbull by the will of Susan Bryant.

The plaintiff, on a visit to Togus and to said Soldiers' Home in 1876, became acquainted with George Bryant Trumbull, who exhibited much distress on account of the defendant being an inmate of an asylum for paupers, and his reported sickly condition, stating to her that he, said George Bryant Trumbull, had no property except his lease of his estate for fifty years to Cutter, and that, on his death, the defendant would have a property worth $10,000. The plaintiff, at George Bryant Trumbull's request, and having informed herself of the provisions of the will of Susan Bryant, and of the terms of said lease to Cutter, and of the value and income of the estate to which it related, undertook and continued the maintenance of the defendant as aforesaid, not in any respect relying upon the credit of George Bryant Trumbull, but relying solely upon the credit of the defendant's estate, expected on the death of his father.

John O. Teele was duly appointed guardian of the defendant in 1871, and, until the death of George Bryant Trumbull, had no means or property of the defendant, and did nothing for his maintenance; but since November, 1883, Teele, as such guardian, has had possession and control of real estate in Boston of the value of about $8000, which constitutes all of the defendant's property, and yielding rents received by Teele in the defendant's interest.

The defendant offered no evidence; but requested the judge to rule, as matter of law, that, upon all the facts in evidence on the part of the plaintiff, this action could not be maintained.

The judge refused to rule as requested; ruled that, upon the facts above stated, the same being found by him, the plaintiff was entitled to recover the sum stated in her account annexed; and ordered judgment for the plaintiff accordingly. The defendant alleged exceptions.

*J. F. Brown,* (*P. Keyes* with him,) for the defendant.
*J. R. Smith,* for the plaintiff.

C. ALLEN, J. The practical question in this case is, whether the food, clothing, &c. furnished to the defendant were necessaries for which he should be held responsible. This question must be determined by the actual state of the case, and not by appearances. That is to say, an infant who is already well provided for in respect to board, clothing, and other articles suitable for his condition, is not to be held responsible if any one supplies to him other board, clothing, &c., although such person did not know that the infant was already well supplied. *Angel* v. *McLellan*, 16 Mass. 28. *Swift* v. *Bennett*, 10 Cush. 436. *Davis* v. *Caldwell*, 12 Cush. 512. *Barnes* v. *Toye*, 13 Q. B. D. 410. So, on the other hand, the mere fact that an infant, as in this case, had a father, mother, and guardian, no one of whom did anything towards his care or support, does not prevent his being bound to pay for that which was actually necessary for him when furnished. The question whether or not the infant made an express promise to pay is not important. He is held on a promise implied by law, and not, strictly speaking, on his actual promise. The law implies the promise to pay, from the necessity of his situation; just as in the case of a lunatic. 1 Chit. Con. (11th Am. ed.) 197. *Hyman* v. *Cain*, 3 Jones, (N. C.) 111. *Richardson* v. *Strong*, 13 Ired. 106. *Gay* v. *Ballou*, 4 Wend. 403. *Epperson* v. *Nugent*, 57 Miss. 45, 47. In other words, he is liable to pay only what the necessaries were reasonably worth, and not what he may improvidently have agreed to pay for them. If he has made an express promise to pay, or has given a note in payment for necessaries, the real value will be inquired into, and he will be held only for that amount. *Earle* v. *Reed*, 10 Met. 387. *Locke* v. *Smith*, 41 N. H. 346. Met. Con. 73, 75.

But it is contended that the board, clothing, &c. furnished to the defendant were not necessaries, because he, " being a pauper and an inmate of an almshouse, was supplied with necessaries suitable to his estate and condition, and, under the circumstances, it would have been the duty of the guardian to place him in the almshouse." It is true that a guardian is not obliged to provide for the support of his ward, when he has no property of the ward available for that purpose; and, if he has no other resource, no doubt he may, under such circumstances, place the ward in an almshouse. The authorities cited for the defendant

go no further than this. *Spring* v. *Woodworth*, 2 Allen, 206. But this by no means implies that a boy with an expectation of a fortune of $10,000 should be brought up in an almshouse, if any suitable person will take him and bring him up properly, on the credit of his expectations. On the other hand, it seems to us highly proper for a parent or guardian, under such circumstances, to do what the father did in this case; leaving it for the boy's guardian to see to it that an unreasonable price is not paid. Looking to the advantage of his subsequent life, as well as to his welfare for the time being, his transfer from an almshouse to a suitable person, by whom he would be cared for and educated, would certainly be judicious; and the support and education furnished to an infant of such expectations, whose means were not presently available, fall clearly within the class of necessaries. In Met. Con. 70, the authority of Lord Mansfield is cited to the point that a sum advanced for taking an infant out of jail is for necessaries. *Buckinghamshire* v. *Drury*, 2 Eden, 60, 72. See also *Clarke* v. *Leslie*, 5 Esp. 28. Giving credit to the infant's expectation of property is the same as giving credit to him. There was no error in refusing to rule, as matter of law, that, upon all the facts in evidence, the action could not be maintained. The findings of all matters of fact, of course, are not open to revision. *Exceptions overruled.*