LEWIS LIPPMAN, Appellant, v. EUGENE C. TITTMANN,
Administrator, etc., Respondent.

**St. Louis Court of Appeals, May 8, 1888.**

ORPHAN CHILD—COMPENSATION FOR MAINTENANCE.—One who has
reared and maintained an orphan child cannot claim compensation
for so doing if, at the time of his benefactions, he did not intend
or expect to be paid for them. But he has the right to change
his intention in this regard at any time, and if it appear that,
at a certain point of time, he did so change it that thereafter
he intended and expected to be compensated out of the child's
estate, then he will be entitled to recover for reasonable and
necessary expenditures in the child's behalf after such change of
intention. And in a suit upon an account covering the whole
period of care and maintenance, it is error for the court to deny
him any right of recovery whatever, by sustaining a demurrer to
the evidence.

APPEAL from the St. Louis Circuit Court, HON.
JAMES A. SEDDON, Judge.

*Reversed and remanded.*

G. M. STEWART, for the appellant: The only
question which the court has to consider in this appeal
is, whether the testimony adduced by the plaintiff
tended to prove any fact which should have been sub-
mitted to the jury.   We claim that the evidence offered
and admitted very clearly tended to show : (1) That the
appellant was under no legal or moral obligation to
support the deceased ; (2) that he did expect compensa-
tion for his support and education and expenditures
which he incurred for him.   The plaintiff did not stand
in the relation of *loco parentis* to the deceased.   A
guardian of the person and curator of the estate of the
deceased was appointed by this court about 1870 or
1871, who held that position and sustained that relation
so long as decedent lived.   This appointment passed the
full control and custody of the deceased to the guardian.
Rev. Stat., 1879, sec. 2578.   The appellant was under no
legal obligation to support him ; had no legal control of
him in any way ; had no right to his wages, and was
not liable for his support.   There was no adoption of
him by appellant.   *Sharkey v. McDermott*, 16 Mo.
App. 80.   Mr. Lippman could at any time have refused
to give the boy shelter, food, or clothing ; could have
refused to have nursed him during his last illness, or
have given his body burial, and he would have violated
no legal or moral obligation which he owed to the boy,
nor would he have become liable to any other person
who might have performed these offices for the deceased.
The case must rest on these propositions, viz.,
(*a*) Were the charges which are made by the appellant
for necessaries ?  (*b*) Did the appellant, Mr. Lippman,
intend when so supplying the infant with these neces-
saries, to charge him or his estate for the same ?   That
the charges made in this case were for necessaries will
not, we apprehend, be disputed : his board, lodging,
schooling, medical attendance, nursing, etc.   That
these were necessaries does not admit of argument.
Did Mr. Lippman intend to charge for these necessaries

or be compensated therefor? If there was any evidence tending to show this, then the case should have been submitted to the jury. *Folger v. Heidel*, 60 Mo. 384; *Trainer v. Turnbull*, 141 Mass. 527; s. c., 25 Am. Law, Reg. 695, with notes; *State ex rel. v. Sleven*, 6 S. W. Rep. 68.

SMITH & HARRISON, for the respondent: Mr. Lippman stood in the relation of *loco parentis* to the child. The plaintiff's evidence clearly showed that he voluntarily received the infant into his home as a member of his family without any intention of charging him for support and maintenance; and what was originally intended by him as a gratuity could not subsequently be turned into a charge. One cannot maintain a claim against the estate of an infant for care and support of such infant, where the testimony shows that such claimant voluntarily assumed the relation of *loco parentis* towards such infant without consulting his guardian and curator as to such care or support, or the necessaries to be supplied. *Academy v. Bobb*, 52 Mo. 357; *Folger v. Heidel*, 60 Mo. 284; *Whipple v. Dow*, 2 Mass. 418; *Allen v. College*, 41 Mo. 309. The relation of *loco parentis* having been established, the burden of proof was on the plaintiff to show a contract, express or implied, that he was to receive compensation. The law will not imply a contract in such circumstances, the relation of the parties repelling the presumption which would otherwise arise. Wharton on Contracts, sec. 719, and cases cited; *Cowell v. Roberts*, 79 Mo. 218, 221; *Guenther v. Birkicht*, 22 Mo. 439, and cases cited; *Bank v. Aull*, 80 Mo. 199, 202; *Morris v. Barnes*, 35 Mo. 412.

ROMBAUER, P. J., delivered the opinion of the court.

Mrs. Ballentine died in 1866, leaving four surviving children of tender age. Her husband Alexander, being unable to take care of them, three of the children were placed in a charitable institution, and the fourth, who

is the decedent, Wm. Ballentine Becker, then a child in arms, was taken into the family of Wm. Becker, and reared as a child of that family. Thereafter Alexander Ballentine, the father, was killed in a railroad accident, and Wm. H. Thompson was appointed guardian of the persons and curator of the estate of the four children. As such guardian he recovered four thousand dollars, in the year 1870, from the railroad company, being one thousand dollars for each of the children. This appears to have been their only estate. He acted as such guardian and curator until the three other children arrived at age, and then accounted to them as such. The residue of the share of Wm. Ballentine Becker, he paid to the defendant administrator, after the decedent's death in 1886.

Wm. Becker died in 1878, leaving a family of children. The plaintiff, a friend of the family, thereupon took Becker's children into his custody, including Wm. Ballentine Becker, and reared them all as members of his own family. There was at no time any express contract between the plaintiff and the curator Thompson, as to any compensation which the plaintiff was to receive for the rearing and maintenance of Wm. Ballentine Becker, nor did the plaintiff at any time prior to the year 1881 suggest to the curator the question of compensation.

In March, 1881, the plaintiff's financial condition having become materially changed, he approached the curator stating such fact, and requesting that he make some allowance for the support of the child, and the curator thereupon gave him one hundred and fifty dollars, out of money of the child in his hands. He paid to him like amounts in August, 1882, in June, 1883, in August, 1884, and in July, 1885, taking from him receipts in the following form :

"Received of Wm. H. Thompson, one hundred and fifty dollars, account necessary expenses for sustenance of his ward, Wm. T. Ballentine.

"Lewis Lippman."

The amounts thus paid, aggregating seven hundred and fifty dollars, were allowed by the probate court to Thompson as proper credits in his final settlement with the decedent's administrator.

In January, 1887, plaintiff presented the following account for allowance against the decedent's estate, in the present action:

" To boarding, clothing, schooling, and
      care of deceased, from September,
      1878, to September, A. D., 1885,
      seven years, at $150 per year....$1,050 00
To cash paid expenses for deceased, in
      sending him to Denver, Colorado,
      on recommendation of physician,
      for the recovery of his health, and
      maintaining him while there, from
      September, 1885, to April, 1886... $400 00
To care, support, and maintenance of
      deceased in St. Louis, from April,
      1886, to August, 1886, during his
      last sickness, at $50 per month.. $200 00
To physician's bill paid for deceased,
      from September, 1878 to September, 1885...................... $ 100 00
                               —————

     Total amount due.............$1,750 00

### CR.

March 16th, 1881, by cash from cur-
      ator, on account of maintenance.$ 150 00
August 3rd, 1882.................... 150 00
June 5th, 1883.......... ........... 150 00
August 26th, 1884.................. 150 00
July 2nd, 1885..................... 150 00
                               —————

     Total........... ............. ..$ 750 00
                               —————

     Balance due...................:..$1,000 00"

The account was rejected by the probate court, and

upon trial in the circuit court on appeal, the facts above recited appearing in evidence with proof of the reasonableness of the charges in the account and the necessity of the expenditures, the court instructed the jury that plaintiff could not recover. The plaintiff thereupon took a nonsuit, and after an ineffectual motion to have the same set aside, brings the case here by appeal.

It will thus be seen that the only question presented for our consideration is, whether the plaintiff presented any evidence which entitled him to go to the jury, or whether upon the conceded facts he has no cause of action whatever, as a matter of law.

The rules of law which furnish an answer to this question are very simple. On the one hand, it is plain that the plaintiff was under no legal or moral obligation to support the child, and was, therefore, entitled to compensation for so doing, provided he did it under circumstances from which a promise to pay can be implied. *Trainer v. Trumbull*, 141 Mass. 527. On the other hand, it is equally plain that no promise can be implied contrary to the intention of the parties. *Folger v. Heidel*, 60 Mo. 284; *Cowell v. Roberts, Executor*, 79 Mo. 218, 221; *Aull Sav. Bank v. Aull's Adm'r*, 80 Mo. 199, 202. To that extent it is immaterial whether or no the plaintiff as to the child stood *in loco parentis*, as that relation, in the absence of legal adoption, subjects him to no legal duty of support. *Sharkey v. McDermott*, 16 Mo. App. 80.

Applying the law thus stated to the facts appearing in evidence, it seems clear that the plaintiff has offered no evidence tending to show that he took the child into his family intending to charge for its support. On the contrary, the evidence admits of no other construction, but that the intention to charge for such support was first entertained by him in 1881, when, owing to his altered financial condition, the burden became one which he considered too onerous to bear alone. But since he was under no obligation to support the child, he was at liberty to change that intention at

any time. He could not change his intention so as to relate back to past expenditures (*Folger v. Heidel, supra; Hoolan v. Bailey*, 30 Mo. App. 585), but might change it so as to affect expenditures thereafter incurred. That he did do so, and that he advised the curator of that fact, sufficiently appears from the evidence to entitle him to go to the jury.

In conclusion we state that, while the plaintiff's evidence fails to support the first item of his account as to dates anterior to March 16, 1881, and shows by the credits in the account that he has no claim on that item remaining unpaid prior to March 16, 1886, and that, while the evidence debars him of all claim even on the last item of his account prior to March 16, 1881, there was evidence which entitled him to go to the jury on the residue of his account. The court, therefore, erred in withdrawing the case from the jury.

Judgment reversed and cause remanded. All concur.