AUGNER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

MONEY RECEIVED—OBLIGATION CREATED BY LAW.

An action under Laws 1896, c. 112, § 4, providing that the holders of liquor licenses annulled by that act before their expiration may recover from the city which granted the license the proportionate amount of the license fee for the unexpired term, is an action on "an implied contract to pay money received" (Code Civ. Proc. § 420), in which judgment may be entered on default without application to the court. Barrett and Rumsey, JJ., dissenting.

Appeal from special term, New York county.

Action by Max Augner against the mayor, aldermen, and commonalty of the city of New York to recover the proportionate amount of the license fee for a liquor license issued to plaintiff and annulled by the license tax law. From an order denying plaintiff's motion for judgment on default, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Charles Goldzier, for appellant.
George O'Reilly, for respondent.

INGRAHAM, J. We have here to determine whether the complaint in this action sets forth a cause of action which consists of "an express or implied contract to pay money received or disbursed, or the value of property delivered, or of services rendered by, to, or for the use of, the defendant or a third person; and thereupon demands judgment for a sum of money only." Code, § 420. It is difficult to understand what was meant by the language here quoted. The meaning would be clear if the words "received or disbursed" were omitted. Reading the whole section together, however, it would seem as if it was intended to allow a judgment to be taken without application to the court in a case where the action was either for the breach of an express contract to pay, absolutely or upon a contingency, a sum or sums of money fixed by the terms of the con-

tract, or capable of being ascertained therefrom, by computation only, or an express or implied contract to pay money, or the value of property delivered, or of services rendered, where the complaint demands judgment for a sum of money only. In such a case the complaint setting forth the cause of action must set forth the facts which show either an express contract, or facts from which the law raises the implication of a contract to pay a definite sum of money. There the defendant has notice of the foundation of the alleged obligation, and the amount of money for which the plaintiff asks judgment. By a failure to answer such a cause of action the defendant, in substance, consents to a judgment for the sum of money demanded, and in such a case no application to the court is necessary, for the amount of the judgment cannot exceed the amount specifically demanded in the complaint. Does the complaint in this action allege a cause of action based upon an express or implied contract to pay money? If it does, I think the case comes within the section of the Code before cited. The complaint alleges that on or about the 21st day of October, 1895, the plaintiff applied to the board of excise of the city of New York for a license permitting him to carry on business upon the premises No. 53 First street, and that upon payment by him to the board of excise of the sum of $200 as a license fee the said license was duly issued to this plaintiff, which, by its terms, expired on the 20th day of October, 1896; that pursuant to the provisions of the liquor tax law this plaintiff is entitled to receive from the defendant the sum of $61, which is a proportionate share of the license fee paid as aforesaid for the unexpired term which the said license had to run after the 30th day of June, 1896; and a judgment was demanded against the city of New York for the sum of $61, with interest.

By section 4 of the liquor tax law (chapter 112, Laws 1896) it is provided that:

"When a license is terminated on the thirtieth day of June, eighteen hundred and ninety-six, as above provided, the holder of such license shall be entitled to receive and recover from the town or city in which such license was granted, such proportion of the whole license fee paid therefor, as the remainder of the time for which such license would otherwise have run, shall bear to the whole period for which it was granted, and the same shall be paid by such town or city on demand."

The action, therefore, is brought to recover under this provision of the statute a proportionate amount of the sum of money which the plaintiff had paid for a license which had been abrogated by law on the 30th day of June, 1896. In other words, a license having been granted by the state to sell liquor for a certain period, and the state having abrogated that license before the period had expired, recognizing the justice of the plaintiff's claim to have refunded to him the proportionate amount of the license fee paid, where the privilege accorded by the license had been withdrawn, places upon the town or city in which such license was granted the obligation to repay the amount which the plaintiff had paid for his license, but for which he had received no consideration, the license having been abrogated. Is this a cause of action upon an implied contract to pay

money received? It seems to me that there is no doubt but that there would be such·an implied contract if the complaint had alleged that the defendant had received for its own use this money so paid by the plaintiff for the license. It here appears that by·law the board of excise is required to deposit with and pay over to the chamberlain of the city of New York all money received for licenses within 30 days after it is received (see chapter 145, Laws 1879, amending section 2, c. 175, Laws 1870), and we can assume that these public officers have done their duty, and obeyed the law.

In the case of People v. Speir, 77 N. Y. 150, in defining what is an implied contract, it is said:

"There is a class of cases where the law prescribes the rights and liabilities of persons who have not in reality entered into any contract at all with one another, but between whom circumstances have arisen which make it just that one should have a right, and the other should be subject to a liability similar to the rights and liabilities in certain cases of express contract."

As was said in Moses v. Macferlan, 2 Burrows, 1008:

"If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt, and gives this action founded in the equity of the plaintiff's case, as it were upon a contract."

In this case we have the payment by the plaintiff of the license fee, the duty of the board to pay that money within 30 days after it was received by the chamberlain, and a provision of the statute which requires that a proportion of that money be paid to the plaintiff by the city of New York. Upon that obligation, thus created by statute, an action is brought. It seems to me that this is clearly an action upon an implied contract; a contract based upon the obligation of the city of New York to repay to the plaintiff money that it had received, but which it was not justly entitled to retain, because the consideration for which it had been paid, viz. the right from the 30th of June until October 20, 1896, to carry on business under the license granted, had been taken away by the legislature. There is nothing here that imposes upon the city of New York the payment of any sum of money as a penalty. The act itself does not create the liability, but directs the municipal corporation to discharge the obligation which in justice existed against it, to repay to the plaintiff the money that it held of his and for which he had received no consideration. The mere fact that the complaint does not allege that the money was actually received by the defendant does not prevent this obligation to do what is just, imposed on the defendant by the legislature, from being an obligation in the nature of an implied contract. The legislature, I think, undoubtedly assumed, in making the city liable, as we are, I think, entitled to assume upon this appeal, that these boards of excise, who were public officers, had performed the duty required of them by law, and have paid the money to the chamberlain, who held it as the money of the city, to be applied by the city according to law. It is clear that this ruling will carry out the intent of this section of the Code, the sole object of this application being to entitle the plaintiff in these suits to obtain a greater amount of costs against the city of New York than they would be entitled to if the action

was one which would come under the section of the Code above cited; and, as the action is within both the letter and spirit of this section, and as the city object to the application, not to prevent the plaintiff from obtaining a judgment which it can obtain, but simply to prevent the defendant's recovering in all these suits costs against the city on the higher scale provided for in actions which require an application to the court for judgment, I do not see why a strained construction should be given to this section, not necessary to fully protect the city, and which would only result in largely increasing the liability of the city for costs.

I think the order appealed from should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

BARRETT, J. (dissenting). This action is upon what has been aptly termed a quasi contract. It is not upon a genuine contract; that is, an agreement in fact between plaintiff and defendant, either express or implied. It is simply upon a statutory liability, which is sufficient to sustain an action analogous to what was formerly called assumpsit. "This feature," as Judge Allen said in McCoun v. Railroad Co., 50 N. Y. 180, "does not suppose a contract, but simply a promise ex parte." In the classifications of actions this is undoubtedly an action ex contractu, and not ex delicto. But that does not settle the present question, which is whether an action upon an obligation arising solely ex lege, though proceeding in form ex contractu, is contemplated by section 420 of the Code of Civil Procedure. There are many actions upon contract—actual even—which are not within this section. In fact, the contracts, whether express or implied, which come within it are strictly limited. They are: First. An express contract to pay money fixed by its terms, or capable of being ascertained therefrom by computation only. That certainly is not this case. Second. An express or implied contract to pay money received or disbursed, or the value of property delivered, or of services rendered by, to, or for the use of the defendant or a third person. This case cannot come within the two latter alternatives. It has nothing to do with property delivered or services rendered. The claim is that it comes within the earlier specification, namely, "to pay money received or disbursed." As there is no charge in the complaint of the disbursement of money, the point is reduced to its receipt. Does the complaint, then, aver the defendant's breach of "an implied contract to pay money received" by it? There is no other possible phase of the section which bears upon the question presented. The complaint certainly does not aver even an implied contract to pay money received "to or for the use of" the defendant or a third person. It either alleges money received "by" the defendant, or it alleges nothing which is within the section. What, then, is the feature of the contract to which this language refers? Clearly, money received by the defendant to

the use of the plaintiff,—that is, money which, upon its receipt by the defendant, becomes due and payable to the plaintiff, and so becomes due and payable under some contract between them, either express or implied. This means a contract between the parties, an actual contract in fact, whether the promise to pay be direct or inferential. "An implied promise," to again quote Judge Allen in the case cited supra, "or contract is but an express promise proved by circumstantial evidence." It is clear that the codifier here was not dealing with legal fictions invented to sustain remedies ex contractu, upon liabilities which rest upon naught save statutory mandate, pure and simple. The intention was to limit those cases where a plaintiff might enter his judgment without the revisory consideration of the court to breaches of the few simple and actual contracts carefully enumerated in the section. In other code instances we find no such limitation. For example, a warrant of attachment may issue in an action for the breach of any contract whatever, express or implied, except a contract to marry. Code, § 635. But the construction given to even this unlimited provision favors the view that the contract, express or implied, referred to in this latter section, is a contract founded upon consent,—that is, upon the actual meeting of minds; in other words, a contract between the parties in the ordinary and proper sense of this term, and not a mere legal fiction which forces a party to do something which he has never agreed to do. Thus in Paper Co. v. O'Dougherty, 96 N. Y. 666, affirming 32 Hun, 255, it was held that an attachment under section 635 would not lie in an action brought under section 3247 of the Code to recover the costs of a former action, which was prosecuted by the defendant in the name of a third person for her benefit. The presiding justice (Smith) at general term said that "the defendant has made no such contract with the plaintiff or its assignors. She is liable only by the provisions of the statute." A different view was subsequently taken by the court of appeals of an action upon a judgment (Gutta Percha Manuf'g Co. v. Mayor, etc., 108 N. Y. 276, 15 N. E. 402), thus making a distinction—the point of which it is difficult to perceive—between the fiction of a promise founded upon a legislative mandate, and that founded upon a judicial mandate. The same court had previously held that a judgment was not a contract within the meaning of an act reducing the rate of interest, but reserving from its operation "any contract or obligation" made prior to its passage. O'Brien v. Young, 95 N. Y. 428. It had also held, in People v. Speir, 77 N. Y. 144, that the phrase "contract express or implied," as used in the old nonimprisonment act (Laws 1831, c. 300), referred to a contract resulting from the voluntary arrangement of the parties, and not one implied by law for the purpose of giving a remedy for a wrong. Judge Danforth said in that case that the implied contract referred to in the statute is one where "the intention of the parties, if not expressed in words, may be gathered from their acts and from surrounding circumstances"; and, whether express or thus implied, "must be the result of the free and bona fide exercise of the will producing the

aggregatio mentium, the joining together of two minds, essential
to a contract at common law." The learned judge added:

"There is a class of cases where the law prescribes the rights and liabilities of
persons who have not in reality entered into any contract with one another, but
between whom circumstances have arisen which make it just that one should
have a right and the other should be subject to a liability, similar to the rights
and liabilities in certain cases of express contracts. * * * Therefore these facts
are called 'quasi contracts,' because, without being contracts, they produce obliga-
tions in the same manner as actual contracts."

The conclusion there was that the statute did not embrace ob-
ligations of the latter class. To the like effect are Louisiana v.
Mayor, etc., of City of New Orleans, 109 U. S. 285, 3 Sup. Ct.
211, and Steamship Co. v. Joliffe, 2 Wall. 450. The same point
was directly involved in Inhabitants of Milford v. Com., 144 Mass.
64, 10 N. E. 516. The superior court was given jurisdiction by
statute "of all claims against the commonwealth of Massachu-
setts which are founded in contract for the payment of money,"
and it was there held that this jurisdiction did not extend to an
obligation imposed by law upon the commonwealth to reimburse
the expense incurred by a town in support of a state pauper.
Field, J., observed that:

"A contract is sometimes said to be implied when there is no intention to create
a contract, and no agreement of parties, but the law has imposed an obligation
which is enforced as if it were an obligation arising ex contractu. In such a case
there is not a contract, and the obligation arises ex lege."

In England these quasi contracts are no longer confused with
"implied contracts." Lord Justice Cotton, in Rhodes v. Rhodes,
44 Ch. Div. 94, referring to the nature of the obligation incurred
by a lunatic for necessaries supplied, declared that "the term 'im-
plied contract' was a most unfortunate expression, because there
cannot be a contract by a lunatic." "It is asked," observed that
learned judge, "can there be an implied contract by a person who
cannot himself contract in express terms? The answer is that
what the law implies on the part of such a person is an obliga-
tion, which has been improperly termed a contract, to repay money
spent in supplying necessaries." See, also, Trainer v. Trumbull, 141
Mass. 527, 6 N. E. 761; Cunningham v. Reardon, 98 Mass. 538;
Read v. Legard, 6 Exch. 636.

Looking at the present complaint in the light of reason and
authority, as applicable to the statute under consideration, what
do we find? An allegation that the plaintiff paid $200 to the for-
mer board of excise of the city of New York for a license to sell
spirituous liquors for one year; and that, "pursuant to the provi-
sions of the liquor tax law, this plaintiff is entitled to receive
from the defendant the sum of $61^{00}/100, which is a proportionate
share of the license fee paid as aforesaid for the unexpired term
which the said license had to run after the 30th day of June, 1896."
There is no allegation that the city received the original fee,
though that may be inferred, because of the presumption that pub-
lic officers have done their duty. The board, in granting the
license, "were not exercising a jurisdiction as agents of the cor-
poration." People v. Murray, 149 N. Y. 375, 376, 44 N. E. 148.

But there certainly is no allegation, either direct or indirect, that the city received the license fee to the use of the plaintiff. It was paid by the plaintiff to the board, and, if received by the defendant, was so received for public purposes. Under the law the city was bound to pay out of these excise moneys to the Home for Fallen and Friendless Girls certain specified sums for the support of its charity. Consolidation Act, § 208. The board of estimate and apportionment was also authorized to appropriate all excise moneys to certain benevolent and charitable institutions. Consolidation Act, § 210. Thus the legislature has imposed upon the municipality the burden of refunding to licensees whose licenses have been abridged moneys which it originally received and held for charitable purposes; and this, too, whether or not these moneys had already been applied to such purposes. Thus it is apparent that the complaint nowhere alleges a breach of contract, express or implied, "to pay money received by the defendant." The latter phrase undoubtedly means to pay money received by the defendant for the plaintiff, or to which the plaintiff, upon the receipt of such money by the defendant, was in justice entitled. It does not mean to repay to the plaintiff money received from him by the defendant for the defendant's own use, which, owing to circumstances subsequently occurring, the defendant is required to return. What the complaint here really alleges is a statutory obligation to restore to the plaintiff part of the money originally received by the defendant to its own use as statutory trustee for public charity; which part, in equity and justice, as decreed by the legislature, should now be refunded to the plaintiff. That right of action does not depend at all upon the receipt of the license fee by the defendant. The statute gives it whether the board of excise did its duty or not; whether that board paid the fee into the city treasury or not; whether, if it did, the city has applied the fee to the specified charities or not. The right of action depends solely upon the two facts: First, the payment of the license fee to the board; and, second, the statutory termination of the license. Laws 1896, c. 112, § 4. Our conclusion is that this right of action is not upon a contract, express or implied, within the meaning of that phrase as used in section 420 of the Code; that it is not in fact upon a contract at all, but upon the fiction of a promise implied by law from statutory compulsion; and that it certainly is not upon an implied contract to pay money received by the defendant. It follows that the nature of the plaintiff's action was such that he could not take judgment without application to the court.

The order appealed from should, therefore, be reversed, with $10 costs and disbursements, and the motion for judgment granted, without costs

RUMSEY, J., concurs.