## Richmond.

## L. C. BUTLER V. COMMONWEALTH.

### March 16, 1922.

### Absent, West, J.

1. PARENT AND CHILD—*Abandonment and Failure to Support Children—Children Taken from Father by Wife—Case at Bar.*—In the instant case, a prosecution, under sections 1936, 1937, Code of 1919, of a father for failure to provide for the support of his children, it appeared that the father had been out of work for some time, and that his wife, with his consent, went to her father, taking the children with her, until he could find work. After several months his wife returned, packed up the furniture and removed it, without seeing her husband, declaring that she would never live with him again. During the period of separation the husband sent the wife very little money, but he had, as she knew, very little money to send. No excuse for the wife's conduct appeared in the record.

    *Held:* That under th eevidence, a conviction could not be sustained.

2. PARENT AND CHILD—*Abandonment and Failure to Support Children—Children Taken from Father by Wife.*—A man is under legal obligation to support his children, and he may often be required to do so when they are not living with him, but he cannot be said to willfully neglect and refuse to support them where his wife, without reasonable excuse, and with the acquiescence and aid of her father, keeps them away from him.

3. PARENT AND CHILD—*Liability of Father for Support—Wife and Wife's Father Keeping Children Apart from her Husband.*—Where a wife, with the acquiescence of her father, keeps her children away from her husband at her father's house, neither the wife nor the wife's father can charge the husband in a civil suit for the support and maintenance of the children.

4. PARENT AND CHILD—*Support and Maintenance—Children Away from Home—Code of 1919, Sections 1936, 1937.*—A father has the right at common law to maintain his children in his own home, and he cannot be compelled against his will to do so elsewhere, unless he has refused or failed to provide for them

where he lives, and sections 1936, 1937, Code of 1919, providing for the punishment of a father for the failure to support his children, were not intended to change the common law, with respect to the duty of a father to maintain and support his infant children, but merely to more effectually enforce the legal duty.

5. PARENT AND CHILD—*Failure to Support Children—Prosecution Under Sections 1936, 1937, Code of 1919.*—In a prosecution of a father for failure to support his infant children, where his wife had taken the children to the house of her father in another State, his failure to resort to legal process to bring them back from that State to his home afforded no ground upon which to hold him liable for their maintenance and support.

Error to a judgment of the Corporation Court of the city of Norfolk.

*Reversed.*

The opinion states the case.

*N. T. Green,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

[1, 2] The defendant, L. C. Butler, upon appeal from a sentence of the Juvenile and Domestic Relations Court of the city of Norfolk, was tried by a jury in the Corporation Court of that city and found "guilty of willful neglect to support his two infant children, then in destitute and necessitous circumstances," the punishment being fixed at a fine of five hundred dollars. The court, having first overruled a motion made by the defendant for a new trial on the ground that the verdict was contrary to the law and the evidence, rendered judgment in accordance with the verdict; and to that judgment, this writ of error was awarded.

The warrant upon which the defendant was tried was issued upon the complaint and affidavit of Lillian Butler, wife of the defendant, and the charge was that "he did unlawfully and willfully neglect and refuse to provide for the support and maintenance of his wife and two infant children under the ages of ten years, they being then in destitute and necessitous circumstances." (Code 1919, secs. 1936, 1937.)

It will be observed that the effect of the verdict was to find the defendant not guilty as to the alleged nonsupport of his wife. The further essential facts may be stated as follows:

Butler and his wife were married in 1917. For about a year prior to December 19, 1920, they lived in the city of Norfolk. Their two children at the time of the trial were, respectively, two and three years of age. There is some conflict of evidence upon the subject, but, taking it as a whole and making due allowance for some exaggeration of statement by both of the parties, it seems fair to say that prior to the last-named date, the defendant had provided for his wife and children about as well as his employment and earning capacity would permit. He had no regular avocation, and he was frequently out of work. During the periods when he was without anything to do, it was usual for his wife to go with the children to her father's home, in North Carolina. Occasionally they went with him to his father's home, in Virginia.

On the 9th of December, 1920, Mrs. Butler went to visit her father, and stayed about three weeks. She returned to Norfolk in January and remained with her husband for about ten days. He was out of employment at that time, and at the suggestion of his father he proposed to his wife that they go to stay with him until he could find work, but she preferred to go to her own people, and thereupon, by mutual consent and apparently without any quarrel or mis-

understanding between them, she returned to her father's home, taking the children with her, to remain, as she testified, "until work opened up." On or about the 7th of March, the defendant succeeded in getting employment with a street car company in Norfolk at a wage of one dollar per day, and on the 9th of March he wrote to his wife that he had found some employment, and that he "hoped things would get along all right and things would soon be all right for her to come back after a while." This quotation is taken from his testimony, and the letter itself was not introduced. There is some uncertainty as to the exact contents of the letter, but she admits that he wrote her at that time with reference to his new employment, and it is perfectly clear that he expected her to return and bring the children to live with him as soon as his income would justify it. He had engaged rooms with this in view at the same boarding house at which they had theretofore stayed.

On the 12th of March, Mrs. Butler, accompanied by her father, came back to Norfolk, got practically everything in the way of bedroom and kitchen furniture which they had theretofore been using, took these things away, and left without seeing Butler or attempting to see him. (She testified that these things belonged to her.) He was away from the house and at work at the time. She said on that occasion to Mrs. Bradshaw, his boarding-house keeper, that she would never live with him again. On March 31st, without communicating with him further, she procured the warrant in this case. At the hearing before the judge of the juvenile and domestic relations court she said again that she would not live with him, and repeated that statement on the trial in the corporation court. The defendant admits that he only sent his wife two dollars after she went back to her father's home in January, but he has always been willing, and is now willing, to take her and the chil-

dren back to live with him and to support them as best he can.

The formal assignments of error rest upon the giving and refusing of certain instructions, but the petition upon which this writ of error was granted and the brief of the Attorney General are agreed that the substantial and controlling question, for us to decide is whether, upon the evidence as certified, the judgment can be sustained.

In our view of the case, the question just suggested must be answered in the negative. A man is under legal obligation to support his children, and he may often be required to do so when they are not living with him, but he cannot be said to *willfully* neglect and refuse to support them where his wife, without reasonable excuse, and with the acquiescence and aid of her father, keeps them away from him. The defendant, it is true, sent his wife practically no money after their agreed temporary separation, but he had, as she knew, very little money to send, and, so far as the record shows, there was every reason for him to suppose that the arrangement pursuant to which they separated in January was satisfactory to her, and that she and the children would return to him as soon as his income improved. Her unexpected conduct of the 12th of March, when she came and got the household and kitchen furniture and went back to her father's home with the declaration that she never intended to live with him again, finds no satisfactory excuse in the record.

In the case of *Mihalcoe* v. *Holub,* 130 Va. 425, 107 S. E. 704, we held that the duty of a father to support his infant children was a legal duty, but we further said in that opinion: "Where the child is living away from the father, the question of his liability will depend upon the circumstances of the case. If he abandons the child, or drives him from home he is liable to any person who furnishes necessary support; but the person furnishing it must bear the burden

of proving that there was an unjustified abandonment, that the support furnished was necessary, and that the credit of the father was, in contemplation of law, the basis of the advances."

[3, 4] Now, in this case, it is perfectly clear that neither the wife nor the wife's father could charge the defendant in a civil suit for the support and maintenance of the children. His duty to support them is based largely upon his right to their custody and control. To say the least of it, he has the right at common law to maintain them in his own home, and he cannot be compelled against his will to do so elsewhere, unless he has refused or failed to provide for them where he lives. These propositions are abundantly supported by authority. See *Mihalcoe* v. *Holub, supra,* and authorities cited therein; *Angel* v. *McLelland,* 16 Mass. 28, 8 Am. Dec. 118; *Baldwin* v. *Foster,* 138 Mass. 449; *Foss* v. *Hartwell,* 168 Mass. 66, 46 N. E. 411, 60 Am. St. Rep. 366, 37 L. R. A. 589; *Hyde* v. *Leisenring,* 107 Mich. 490, 65 N. W. 536; *Shields* v. *O'Reilly,* 68 Conn. 256, 36 Atl. 49.

The statute under which this prosecution was instituted was not intended to change the common law with respect to the duty of a father to maintain and support his infant children, but merely to more effectually enforce the legal duty. Up to the time when the defendant's wife carried away the furniture, announced that she intended to break off relations with him, and went back to her father's home to stay, we discover nothing in the evidence to warrant the jury in finding that Butler was not acting in good faith and in reliance upon the mutual agreement pursuant to which she had gone home in January. That arrangement was voluntarily and wrongfully canceled by her, and she has been in default ever since. Notwithstanding all this, he appears to have been patient and hopeful, and said in his testimony that he simply waited after her unexpected trip in March, hoping that she would soon come back to

him. He held the rooms which he had reserved, as above mentioned, for their joint use, until some time in May.

[5] While it is quite true that upon these facts he is at this time entitled to the custody of the children, his failure to resort to legal process to bring them back from the State of North Carolina to his home in Norfolk affords no ground upon which to hold him liable for their maintenance and support. This latter proposition is expressly decided in *Baldwin* v. *Foster, supra.*

The authorities we have cited relate mainly to the civil liability of the father to the mother, or some third party, for necessaries furnished the children, and not to prosecutions under criminal statutes; but these authorities are conclusive as to the common law duty of the father, and we have no difficulty in holding that the Virginia statute cannot be so construed as to enable the wife upon the facts above recited to procure a conviction of her husband for a violation thereof, either as to herself or as to her children.

The judgment complained of will be reversed, the verdict of the jury set aside, and the case remanded for a new trial, to be had not in conflict with the views herein expressed, if the Commonwealth shall be so advised.

*Reversed.*